# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| FLOYD C. SAUVE,<br><br>                Petitioner,<br><br>v.<br><br>WARDEN RANDALL R. HEPP,<br><br>                Respondent. | Case No. 18-CV-932-JPS<br><br>**ORDER** |

       Petitioner Floyd C. Sauve ("Sauve") brings this petition for a writ of habeas corpus to challenge a state court conviction arising from Milwaukee County Circuit Case No. 2014CF004500. (Docket #1). In that case, a jury found Sauve guilty of using a computer to facilitate a child sex crime in violation of Wis. Stat. § 948.075(1r). Sauve claims that his due process rights were violated during his jury trial and sentencing. Specifically, he contends that (1) the circuit court's decision to admit evidence of Sauve's "other acts," which included sexually explicit text messages that he sent to other girls who were not involved in Case No. 2014CF004500, violated his right to a fair trial; (2) the evidence presented at trial was insufficient to prove an intent to have sexual contact with a minor; and (3) Sauve's sentence was excessive, wrongly imposed without the benefit of a presentence report, and failed to take into account mitigating factors.

       Respondent acknowledges that Sauve has exhausted his claims and filed the habeas petition within the one-year statute of limitations. (Docket #18 at 2–3). The parties have fully briefed their respective positions on Sauve's asserted grounds for relief pursuant to Magistrate Judge William E. Duffin's scheduling order. *See* (Docket #8). For the reasons explained

below, the Court finds that Sauve's petition is without merit and therefore must be denied.

1. **STANDARD OF REVIEW**

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. To obtain habeas relief from a state conviction, 28 U.S.C. § 2254(d)(1) (as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA")) requires the petitioner to show that the state court's decision on the merits of his constitutional claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). The burden of proof rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006).

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown*, 544 U.S. at 141. Similarly, a state court unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013).

The AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected vigor" the strict limits imposed by Congress on the authority of federal habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637

F.3d 831, 839 (7th Cir. 2011). It is not enough for the petitioner to prove the state courts were wrong; he must also prove they acted unreasonably. *Harrington v. Richter*, 562 U.S. 86, 101 (2005); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) ("An 'unreasonable application of' federal law means 'objectively unreasonable, not merely wrong; even 'clear error' will not suffice.'") (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)).

Indeed, the petitioner must demonstrate that the state court decision is "so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) (quoting *Harrington*, 562 U.S. at 102). The state court decisions must "be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Hartjes v. Endicott*, 456 F.3d 786, 792 (7th Cir. 2006). Further, when a state court applies general constitutional standards, it is afforded even more latitude under the AEDPA in reaching decisions based on those standards. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

As the Supreme Court has explained, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Indeed, Section 2254(d) stops just short of "imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *See id.* This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).

A federal court may also grant habeas relief on the alternative ground that the state court's adjudication of a constitutional claim was based upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). The underlying state court findings of fact and credibility determinations are, however, presumed correct. *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013). The petitioner overcomes that presumption only if he proves by clear and convincing evidence that those findings are wrong. 28 U.S.C. § 2254(e)(1); *Campbell*, 770 F.3d at 546. "A decision 'involves an unreasonable determination of the facts if it rests upon factfinding that ignores the clear and convincing weight of the evidence.'" *Bailey*, 735 F.3d at 949–50 (quoting *Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). If shown, an unreasonable factual determination by the state court means that this Court must review the claim in question *de novo*. *Carlson v. Jess*, 526 F.3d 1018, 1024 (7th Cir. 2008).

2. **RELEVANT BACKGROUND**

In 2014, Sauve was charged with one count of using a computer to facilitate a child sex crime, in violation of Wis. Stat. § 948.075(1r). He was arrested after he messaged, and arranged meetings with, a fourteen-year-old who is known as "T.N.S." (Docket #18-4 at 2). Sauve knew that T.N.S. was only fourteen, but still sent her sexually explicit messages and arranged to meet with her. Police arrested Sauve when he arrived for their third meeting.

The case proceeded to trial. T.N.S. testified that she had met Sauve online. She explained that initially he pretended to be a teenaged boy, but later he told her that he was thirty-six. According to T.N.S., after messaging for two weeks, they met up at a library. During this meeting, Sauve suggested that she come to his house "if she felt comfortable enough." *Id.* at 3. She testified that Sauve hugged and kissed her goodbye at the end of their second meeting, which took place at a park.

The State presented evidence of the sexually explicit messages that Sauve sent to T.N.S. For example, one message stated, "if we meet and hang out, I won't try to grab your boobs or anything unless you let me, L-O-L." Another message read, "as long as you don't say anything and only do private stuff in private places, no one would get in trouble. I just have to trust you to keep our secret, secret."

The State also presented witness Detective Justin Landry ("Landry"), an investigative officer. Landry had worked on T.N.S.'s case, and had pretended to be T.N.S. in order to arrange the third and final meeting with Sauve. During the exchanges in which Landry pretended to be T.N.S., Sauve said he wanted to make out with her. When Landry arrested Sauve at the meeting place, Sauve was carrying a loaded handgun, knives, and a handcuff key.

Finally, the State presented five text message exchanges between Sauve and two other adolescent girls who were not involved in the charged conduct. These messages with the other girls (hereinafter, the "other acts" evidence) were sexually charged and explicitly discussed their young age. For example, one message read, "even at eleven you [will] still be my youngest kiss." *Id.* at 3.

Before admitting the messages, the trial court held a hearing on their admissibility, and ultimately concluded that although the messages were prejudicial, they were also highly relevant to the charged conduct and probative of Sauve's motive, plan, and intent to commit a child sex crime. (Docket #18-11 at 12:3–22). Specifically, the trial court found that the messages had "a tendency to prove that intent" in light of the "same communication system," the "similar content" of the messages, and the "similar direction to female children." *Id.* at 10:2–6. Later, the trial judge noted that "the communications were all near in time. . . using the same computer system," that the circumstances were very similar, and that the messages "certainly go toward showing intent, and it paints the picture in the context of someone who's basically trolling for victims." *Id.* at 12:13–17. The trial court concluded that the "probative value is not substantially outweighed by other considerations" such as prejudice that the other acts evidence would cause the jury to base its decision on emotion, disgust, or "something other than the established propositions of the case." *Id.* at 12:10–12; 12:18–20.

When Sauve took the stand to testify in his defense, he admitted to messaging with T.N.S., which he described as "stupid" and "flirtatious." (Docket #18-14 at 27:10–11). He acknowledged meeting with her, hugging her, and kissing her, but claimed that he had no intention of having a sexual encounter. *Id.* at 31:2–7.

The judge issued the following jury instruction regarding the other acts evidence:

> Evidence has been presented regarding other conduct of the defendant for which the defendant is not on trial. Specifically, evidence has been presented that the defendant sent

> message[s] to persons other than [T.N.S.] If you find that this conduct did occur, you should consider it only on the issues of motive, opportunity, intent, preparation or plan, knowledge, context or background.
>
> You may not consider this evidence to conclude that the defendant has a certain character or a certain character trait that the defendant acted in conformity with that trait or character with respect to the offense charged in this case. . .
>
> The evidence was received on issues of motive; that is, whether the defendant has a reason to desire the result of the offense charged. Opportunity; that is, whether the defendant had the opportunity to commit the offense charged. Intent; that is, whether the defendant acted with the state of mind that is required for intent [the] offense charged. Preparation or plan; that is, whether the other conduct of the defendant was part of a desire or scheme that led to the commission of the offense charged. Knowledge; that is, whether the defendant was aware of facts that are required to make criminal the offense charged. Cont[ext] and background; that is, to provide a more complete presentation of the evidence relating to the evidence charged.
>
> You may consider this evidence only for the purposes I have described giving it the weight you determine it deserves. It is not to be used to conclude that the defendant is a bad person or that the reason -- or and for that reason is still [guilty of] the offense charged.

(Docket #18-14 at 58:11–59:17).

Based on the evidence presented at trial, the jury found Sauve guilty. On May 22, 2015, he was sentenced to 15 years imprisonment, followed by 25 years of supervision. At this hearing, neither party

requested a presentence investigation report, and the trial court decided not to order one.

3. **ANALYSIS**

   3.1 **Admission of Other-Acts Evidence**

At the outset, the Court must determine whether Sauve procedurally defaulted on his claim that his due process rights were violated by the admission of other-acts evidence. (Docket #18 at 22–23). This Court cannot consider Sauve's habeas claim unless it has first been "fully and fairly presented. . .to the state appellate courts," thereby giving the courts a "meaningful opportunity to consider the substance of the claim[] that he later presents in his federal challenge." *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005); 28 U.S.C. § 2254(b)(1)(A). Fair presentment requires that the petitioner apprise the state courts of the constitutional nature of the claim, but it "does not require hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006) (citation omitted). The Seventh Circuit considers the following factors to determine whether the issue was adequately presented to the state judiciary:

> 1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.

*Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001).

In this case, the Wisconsin Court of Appeals considered the application of Wis. Stat. § 904.04(2), Wisconsin's evidentiary rule that deals with other crimes and acts, to determine whether the trial court "wrongly admitted evidence of his communications with other young girls." *State v. Sauve*, 2016AP546-CR, 2017 WL 2859878, at *3 (Wis. Ct. App. July 5, 2017). In his initial briefing, Sauve did not rely on federal cases that engage in a constitutional analysis of whether the admission of other acts evidence was so improper as to deprive him of due process of law. *See* (Docket #18-2). However, Sauve cited to state court cases that reference this right. For example, in *State v. Marinez*, 797 N.W.2d 399, 423 (Wis. 2011), the Wisconsin Supreme Court evaluated whether the inclusion of other acts evidence "so infected the trial with unfairness as to deny [defendant] due process." (internal quotation marks omitted). The other cases that Sauve cites each evaluate whether the trial courts used a "demonstrate[ed] rational process" when deciding whether to admit evidence of other acts. *State v. Hunt*, 666 N.W.2d 771, 782 (Wis. 2003); *State v. Sullivan*, 576 N.W.2d 30, 36 (Wis. 1998). Those cases require trial courts to engage in a "demonstrative rational process" to ensure that the defendant received a fair trial. *Sullivan*, 576 N.W.2d at 36–37.

This framing—i.e., requiring an evidentiary question be assessed through a certain process in order to ensure fairness to the defendant—calls to mind the due process right to a fair trial, which is enshrined in the Fifth and Fourteenth Amendments. *See Dowling v. United States*, 493 U.S. 342, 343–44, 352 (1990) (holding that the Fifth Amendment's due process clause did not bar the use of testimony regarding another crime for which defendant had been acquitted); *Woodruff v. Lane*, 818 F.2d 1369, 1373 (7th

Cir. 1987) (examining whether evidence of other crimes violated petitioner's due process rights); *Richardson v. Lemke*, 745 F.3d 258, 276 (7th Cir. 2014) ("engaging in an evidentiary due process analysis. . .by asking whether the probative value of the evidence is greatly outweighed by the prejudice to the accused.").

On balance, the Court finds that Sauve's due process rights were sufficiently invoked in the state court litigation that the Wisconsin Court of Appeals would have had notice of the constitutional nature of the claim. The facts and theory at issue here—i.e., the fairness of including other acts evidence—call to mind the oft litigated due process right to a fair trial. This case is distinguishable from a case like *Peterson v. Douma*, in which the Seventh Circuit agreed that a petitioner's arguments were uncertified because he had "never raised a constitutional due process argument in state court, either explicitly or by relying on facts [or] case law that should have put the state court on notice as to the federal constitutional nature of this claim." 751 F.3d 524, 531 (7th Cir. 2014). Respondent's procedural default argument will be disposed of, and the Court will proceed to evaluate the merits of this claim.

Sauve complains that the state court's application of Wis. Stat. § 904.04(2) resulted in an unfair trial. Wis. Stat. § 904.04(2) allows "evidence of other crimes, wrongs or acts. . .when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." *Id.* § 904.04(2)(a). In criminal proceedings for serious sex offenses, "evidence of any similar acts by the accused is admissible." *Id.* § 904.04(2)(b). Like their federal counterparts, state trial judges retain discretion to exclude evidence if "its probative value is substantially outweighed by the danger of unfair prejudice." *Id.* § 904.03.

Wisconsin case law sets forth an analysis for determining whether to admit evidence under Section 904.04(2), which requires that the evidence be offered for a permissible purpose; that the evidence be relevant; and that the probative value substantially outweigh its prejudice or other concerns. *Sullivan*, 216 Wis. 2d at 772–73.

"Within the perimeters of the Due Process Clause the states are free to establish their own rules of evidence and are exempt from federal oversight except in those instances where errors of a constitutional magnitude have been made." *United States ex. rel. Bleimehl v. Cannon*, 525 F.2d 414, 420 (7th Cir. 1975). Accordingly, state court evidentiary issues "are normally not subject to habeas review." *Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001). To establish a habeas claim based on a state court's evidentiary ruling, "a petitioner must establish that the incorrect evidentiary ruling was *so prejudicial* that it violated his due process right to a fundamentally fair trial, creating the likelihood that an innocent person was convicted." *Id.* (emphasis added). In light of the trial court's vast discretion in determining the admissibility of evidence, "[i]f the evidence is probative, it will be very difficult to find a ground for requiring as a matter of constitutional law that it be excluded; and if it is not probative, it will be hard to show how the defendant was hurt by its admission." *Watkins v. Meloy*, 95 F.3d 4, 7 (7th Cir. 1996).

Moreover, the Seventh Circuit has visited the question of whether the admission of prior acts of sexual assault or child molestation to show intent constitutes a due process violation in the federal context, and found that it does not. *United States v. Julian*, 427 F.3d 471, 487 (7th Cir. 2005) (noting that "sexual assault cases, especially cases involving victims who are juveniles, often raise unique questions regarding the credibility of the

victims which render a defendant's prior conduct especially probative."); *United States v. Stokes*, 726 F.3d 880, 896 (7th Cir. 2013) (affirming district court's admission of evidence of a defendant's child molestation conviction and prior sexual abuse of children).

The record demonstrates that the trial court acted well within the bounds of due process when it admitted the evidence of Sauve's prior acts to show that he intended to use electronic communication to initiate sexual encounters with minors. The transcripts show that the court considered the evidence's relevance, purpose, and the extent of its prejudice, and gave a limiting instruction to the jury in order to mitigate any potential prejudicial effect. The Wisconsin Court of Appeals, though tasked with a deferential review, thoroughly engaged with the record and conducted its own three-step inquiry under *Sullivan*, assessing the relevance, purpose, and prejudicial effect of the evidence. *Sauve*, 2017 WL 2859878, at *3–4. The Wisconsin Court of Appeals ultimately concluded that "the record reflects a proper basis for the circuit court's decision to admit the disputed other acts evidence." *Id.* at *4. Federal courts considering the same evidentiary issues consistently reach similar conclusions about the constitutional propriety of including other acts evidence. *See Julian*, 427 F.3d at 487; *Stokes*, 726 F.3d at 896; *Woodruff*, 818 F.2d at 1373; *Richardson*, 745 F.3d at 276. Accordingly, this Court has no basis on which to conclude that evidence was admitted in violation of Sauve's due process rights, or in contravention of clearly established Supreme Court precedent.

### 3.2 Sufficiency of Evidence

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358,

364 (1970). To successfully challenge the sufficiency of the evidence of a conviction, a habeas petitioner must show that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt" based on the evidence presented at trial. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The court need not "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* at 319 (quoting *Woodby v. INS*, 385 U.S. 276, 282 (1966))."Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis in original).

In *State v. Poellinger*, the Wisconsin Supreme Court adopted a similarly deferential standard for reviewing challenges to the sufficiency of evidence, which stems from *Jackson v. Virginia*. 451 N.W.2d 752, 757 (Wis. 1990). Specifically, in *Poellinger*, the Wisconsin Supreme Court stated that "when faced with a record of historical facts which supports more than one inference, an appellate court must accept and follow the inference drawn by the trier of fact unless the evidence on which that inference is based is incredible as a matter of law." *Id.* (citing *Jackson*, 443 U.S. at 326).

Pursuant to *In re Winship*, the State needed to provide evidence to prove, "beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. at 364. Accordingly, in order to prove a violation of Wis. Stat. § 948.075(1r), the state needed to establish that Sauve "use[d] a computerized communication system to communicate with an individual who the actor believe[d] or ha[d] reason to believe ha[d] not attained the age of 16 years with intent to have sexual contact or sexual intercourse with the individual." *See* Wis. Stat. § 948.075(1r). In order to prove intent, the statute further requires "[p]roof that the actor did an act,

364 (1970). To successfully challenge the sufficiency of the evidence of a conviction, a habeas petitioner must show that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt" based on the evidence presented at trial. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The court need not "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* at 319 (quoting *Woodby v. INS*, 385 U.S. 276, 282 (1966))."Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis in original).

In *State v. Poellinger*, the Wisconsin Supreme Court adopted a similarly deferential standard for reviewing challenges to the sufficiency of evidence, which stems from *Jackson v. Virginia*. 451 N.W.2d 752, 757 (Wis. 1990). Specifically, in *Poellinger*, the Wisconsin Supreme Court stated that "when faced with a record of historical facts which supports more than one inference, an appellate court must accept and follow the inference drawn by the trier of fact unless the evidence on which that inference is based is incredible as a matter of law." *Id.* (citing *Jackson*, 443 U.S. at 326).

Pursuant to *In re Winship*, the State needed to provide evidence to prove, "beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. at 364. Accordingly, in order to prove a violation of Wis. Stat. § 948.075(1r), the state needed to establish that Sauve "use[d] a computerized communication system to communicate with an individual who the actor believe[d] or ha[d] reason to believe ha[d] not attained the age of 16 years with intent to have sexual contact or sexual intercourse with the individual." *See* Wis. Stat. § 948.075(1r). In order to prove intent, the statute further requires "[p]roof that the actor did an act,

other than use a computerized communication system to communicate with the individual." *Id.* § 948.075(3); *see also Sauve*, 2017 WL 2859878, at *2.

The Wisconsin Court of Appeals addressed Sauve's contention that "no act was introduced at the trial to prove. . .he intended to accomplish, execute or carry out an intent to have sexual contact or sexual intercourse with the victim." *Id.* The following analysis reflects the Wisconsin Court of Appeals' review of the evidence:

> When evaluating the sufficiency of evidence necessary to prove the fourth element of using a computer to facilitate a child sex crime, a court properly looks at the defendant's actions in conjunction with the computerized communications. *See State v. Schulpius*, 2006 WI App 263, ¶13, 298 Wis. 2d 155, 726 N.W.2d 706. Here, the State showed that Sauve twice met T.N.S. in person, and on the second occasion he hugged and kissed her. Sauve also went to a place where he thought he would have a third meeting with T.N.S., and he arrived heavily armed and carrying a handcuff key. Sauve took these actions in the context of sending computerized messages to T.N.S. and to the person he thought was T.N.S. in which he discussed "grab[bing her] boobs" and "do[ing] private stuff in private places," stated he would have time to "make out or whatever," and expressed his hope for "a hug and a kiss." We must conclude that Sauve committed multiple acts permitting the inference that he intended to have sexual contact with T.N.S. *See id.*
>
> Sauve nonetheless argues that the evidence was insufficient to prove him guilty because, he says, while his actions permit inferences that he was grooming the child for a sexual encounter, "inferences about his intentions w[ere] not

> sufficient." To the contrary, the law is well settled that "[j]uries often must infer intent." *See State v. Williams*, 2002 WI 58, ¶79, 253 Wis. 2d 99, 644 N.W.2d 919. Indeed, "[i]ntent is by its very nature rarely susceptible to proof by direct evidence." *Id.* Moreover, "where more than one inference might be drawn from the evidence presented at trial, we are bound to accept the inference drawn by the jury." *State v. Forster*, 2003 WI App 29, ¶2, 260 Wis. 2d 149, 659 N.W.2d 144. Accordingly, we must reject Sauve's challenge to the sufficiency of the evidence.

*Id.* at *2–3. Pursuant to the principles set forth in *Jackson v. Virginia*, and subsequently adopted in *Poellinger*, the Wisconsin Court of Appeals was properly deferential to the trier of fact. The Wisconsin Court of Appeals noted "multiple acts"—including the multiple meetings planned, the hug and the kiss after the second meeting, and the possession of weapons and a handcuff key upon arrest at the third meeting—which, in conjunction with Sauve's sexually explicit communications and expressed desire to have a "kiss" and "make out or whatever" with T.N.S., would allow a reasonable jury to infer Sauve's intent to have a sexual encounter with the girl. *Id.* The Wisconsin Court of Appeals' decision does not run contrary to, or erroneously apply, Supreme Court precedent. To the contrary, the Court of Appeals properly gave "full play to the responsibility of the trier of fact. . .to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

### 3.3 Challenge to Sentence

Habeas relief is available to people who are held in custody "in violation of the Constitution or laws or treaties of the United States." 28

U.S.C. § 2254. Accordingly, "it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (emphasis in original). It is well settled that "federal habeas corpus relief does not lie for errors of state law." *Id.* (citing and quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). "Thus, an error in the interpretation of [a]. . .statute, or the application of state sentencing rules, does not present a cognizable claim for federal habeas relief." *Dellinger v. Bowen*, 301 F.3d 758, 765 (7th Cir. 2002).

Sauve's primary contention with his sentence is that it was imposed without the benefit of a presentence investigation report, which often discuss mitigating factors or rehabilitative potential. (Docket #1 at 8, 17). Wisconsin state law governs sentencing in state criminal proceedings. *See* Wis. Stat § 972.15; *State v. Melton*, 834 N.W.2d 345, 352 (Wis. 2013). Sauve has not argued that the failure to order a presentence investigation report violates a constitutional right. Accordingly, the Court will not entertain this ground for habeas relief.

5. **CONCLUSION**

For the reasons explained above, the Court finds that Sauve's asserted grounds for relief are without merit. The Wisconsin state courts did not err in their conclusions of law and fact regarding whether Sauve's due process rights were violated by the inclusion and sufficiency of certain evidence. Moreover, his claim regarding his sentence is not cognizable in federal court, and, as it cannot be entertained, it must be dismissed.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of

appealability under 28 U.S.C. § 2253(c)(2), Petitioner must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). As the Court discussed above, no reasonable jurists could debate whether the petition has merit. The Court must, therefore, deny Petitioner a certificate of appealability.

Finally, the Court closes with some information about the actions that Petitioner may take if he wishes to challenge the Court's resolution of this case. This order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within 30 days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See id.* A party is expected to closely review all

applicable rules and determine what, if any, further action is appropriate in a case.

Accordingly,

**IT IS ORDERED** that Petitioner's petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 (Docket #1) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to Petitioner's petition be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 26th day of November, 2019.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge